IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENT KLINGSHIRN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-00542 |
| FIDELITY & GUARANTY LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kent Klingshirn ("Plaintiff" or "Klingshirn"), proceeding *pro se*, has brought this defamation and libel *per se* action against Defendant Fidelity & Guaranty Life Insurance Company ("Defendant" or "F&G"). Plaintiff's claim is based on one form letter sent by Defendant to one of Plaintiff's customers rejecting this customer's annuity application on the ground that "certain regulatory or administrative requirements were not completed by your agent." Following a period of discovery, Defendant F&G filed the pending Motion for Summary Judgment (ECF No. 28) pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court has jurisdiction over this matter as diversity jurisdiction[1] under 28 U.S.C. § 1332 exists and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. The parties' submissions have been reviewed and no hearing

---

[1] Plaintiff Kent Klingshirn ("Plaintiff" or "Klingshirn") is a resident of Medina County, Ohio and was at all times relevant to the complaint "an active, independent, insurance agent licensed in the State of Ohio." Pl.'s Compl. ¶¶ 3,6, ECF No. 1. Defendant Fidelity & Guaranty Life Insurance Company ("Defendant" or "F&G") is an "insurance company organized under Maryland law" with its principal place of business in Baltimore, Maryland. Pl.'s Compl. ¶ 4; Def.'s Answer ¶ 4, ECF No. 10.

1

is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Fidelity & Guaranty Life Insurance Company's Motion for Summary Judgment (ECF No. 28) is GRANTED.

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Preliminarily, the parties have agreed that no genuine issues of material fact exist in this case. Def.'s Mem. in Supp. of Mot. for Summ. J. at 5, ECF No. 28-1 [hereinafter Def.'s MSJ]; Pl.'s Opp. to Def.'s Mot. for Summ. J. at 2, ECF No. 30-1 [hereinafter Pl.'s OSJ.

Plaintiff Kent Klingshirn ("Plaintiff" or "Klingshirn") is a resident of Medina County, Ohio and has been an "active independent, insurance agent licensed in the State of Ohio." Pl.'s Compl. ¶¶ 3, 6, ECF No. 1. Plaintiff sells various insurance products and operates under various business names including Klingshirn Investment Advisors, Klingshirn retirerx.com, Klingshirn & Associates and Klingshirn Companies. Def.'s MSJ, Ex. A., Klingshirn Dep. at 12, 17, 18-19, 62, ECF No. 28-2 [hereinafter Klingshirn Dep.]. Additionally, Plaintiff is an agent for twenty-five (25) to fifty (50) different insurance companies on behalf of which he sells numerous types of insurance products such as health insurance, long term care insurance, Medicare supplements, annuities and life insurance. *Id.* at 22-23. BHC Marketing, Ltd. ("BHC"), a field marketing organization that markets insurance and financial products, was at the times relevant to the Complaint Klingshirn's "up line [a]gency." Pl.'s Compl. ¶ 11.

Klingshirn became an agent of Defendant Fidelity & Guaranty Life Insurance Company ("Defendant" or "F&G"), an insurance company organized under Maryland law with its principal place of business in Baltimore, Maryland, on October 26, 2011. Pl.'s Compl. ¶¶ 4, 7; Def.'s Answer ¶¶ 4, 7, ECF No. 10. On October 28, 2011, Klingshirn completed F&G product specific training required under Ohio law pursuant to the state's adoption of the revised National Association of Insurance Commissioners ("NAIC") Model Regulation on Suitability in Annuity Transactions. Pl.'s Compl. ¶¶ 8-10; Def.'s Answer ¶¶ 8-10; Pl.'s OSJ, Ex. No. 2 at 12, ECF No. 30-3. "Defendant identified SalesLink as a web-based location where insurance agents could satisfy [F&G]'s product specific training requirements." Def.'s Resp. to Pl.'s Second Admis. Req. at 2, no. 5, ECF No. 30-2. A couple of days later, on November 1, 2011, BHC advised Klingshirn that Defendant was unable to access SalesLink and could not verify that Klingshirn had satisfied the required product specific training. Pl.'s Compl. ¶ 11. To remedy the situation, Plaintiff immediately forwarded a screen printout of the SalesLink webpage to BHC indicating that he completed the required product training for FG Index Escalator 6, 8 & 10, FG Guarantee-Platinum 3, 5 &7, and FG Guarantee-Plus 3, 5 & 7. *Id.*; Pl.'s OSJ, Ex. No. 2 at 12.

On November 3, 2011, Klingshirn sold two annuities to his client, Jack C. Kovacs ("Kovacs"), in the total amount of $105,000.00. Pl.'s Compl. ¶ 12. Klingshirn's expected commission was $6,300.00. Pl.'s Resp. to Interrog. No. 9, ECF No. 28-3. Subsequently, however, on November 16, 2011, Defendant sent a letter to Kovacs rejecting his annuity application on the ground that "certain regulatory or administrative requirements were not

3

completed by [his] agent prior to the sale of [his] policy." Nov. 16, 2011 Letter from F&G to Kovacs, ECF No. 1-3. In this letter, Defendant also offered to assist Kovacs in contacting his agent or "locating a properly authorized agent." *Id.* The same day, Defendant notified BHC that Kovacs' policy was canceled due to Klingshirn's failure to complete the required product specific training. Pl.'s Compl., Ex. C, ECF No. 1-4.

Upon being notified that his client received the above mentioned letter, Klingshirn alleges that he became physically ill and vomited. Pl.'s Compl. ¶ 16. He then immediately went to Kovacs home to attempt to explain the situation but, despite his efforts, Kovacs allegedly refused to proceed with the annuity and forbade any further contact. Klingshirn Dep. at 52. Klingshirn further claims that he contacted Defendant on several occasions to request the issuance of a letter of apology and of a correction letter. Pl.'s Compl. ¶¶ 18-21; *see also* Nov. 23, 2011 Letter from Klingshirn to Defendant, Pl.'s OSJ, Ex. 2 at 11. Klingshirn alleges that when Defendant refused to issue a correction and apology letter, he sent a "certified letter to Defendant requesting compensation for willingly and maliciously damaging [his] reputation while causing mental pain, emotional distress and humiliation." *Id.* at ¶ 22. Subsequently, on January 11, 2012, Defendant sent a letter to Kovacs, with a carbon copy to Klingshirn, indicating that Kovacs' application was "inadvertently cancelled due to an administrative error." Pl.'s Compl., Ex. D, ECF No. 1-5. The letter also stated that Klingshirn had "in fact satisf[ied] the noted requirement prior to the signing of the applications." *Id.* The letter further informed Kovacs that he should contact his agent if he would like to continue with the issuance of the policies. *Id.*

4

On February 21, 2012, Klingshirn brought this action alleging defamation and libel *per se* against Defendant. *See generally* Pl.'s Compl. Specifically, Klingshirn claims that the letter to Kovacs and the notice to BHC contained a defamatory statement which constitutes libel *per se*. Pl.'s Compl. ¶¶ 24-25. Klingshirn further claims that this statement caused injury to his reputation, caused him to lose a client and sales, as well as caused him mental pain, emotional distress as well as humiliation. Pl.'s Compl. ¶ 26. With respect to the mental pain and emotional distress, Klingshirn claims that he vomited upon learning that the letter included the statement in question and that contacting Defendant to correct the situation caused him to experience anxiety and sleeplessness. Klingshirn Dep. at 64. Klingshirn seeks $6,300.00 in special damages for lost commission and $343,700.00 in compensatory damages. Pl.'s Resp. to Interrog. No. 9. Klingshirn admitted during his deposition that his calculations for "compensatory damages for loss of reputation, humiliation, emotional distress and loss of client" were based on other cases he found on the internet site VerdictSearch.com. Klingshirn Dep. at 70. Klingshirn further acknowledged that none of the cases relied upon involved insurance agents. *Id.*

The record reflects that at his deposition Kovacs testified that the November 16, 2011 letter did not lead him to conclude that he did not want to do business with Klingshirn. Excerpt from Kovacs Dep. at 14, ECF No. 28-7. Kovacs explained that he at first believed that the application had been rejected because he had "procrastinated and then the time lapsed." Excerpt from Kovacs Dep. at 13, ECF No. 28-6. Then he testified that while not referring to the agent by name, the letter indicated that Klingshirn "didn't do something that

5

was necessary, whatever that was." Excerpt from Kovacs Dep. at 17, ECF No. 30-12. While Kovacs stated that the better agent would be the one who "completed the requirements," Excerpt from Kovacs Dep. at 18, ECF No. 30-12, he also testified that he was still doing business with Klingshirn and that he had recommended Klingshirn to at least one other person. Kovacs Dep. at 14-15, ECF No. 28-7. With respect to his reasons for not going forward with the policies upon learning that Klingshirn had in fact completed the required product specific training, Kovacs stated that he "just got cold feet at the time." Excerpt from Kovacs Dep. at 13, ECF No. 28-6.

The parties also took the deposition of a Nancy Jennett ("Jennett") who apparently is a Fidelity & Guaranty Life Insurance Processing Manager.[2] Pl.'s OSJ, Ex. No. 8, ECF No. 30-9. Jennett testified that she had use or access to SalesLink and was familiar with the NAIC Model Regulation for Suitability in Annuity Transactions. Excerpt from Jennett Dep. at 12, ECF No. 28-10. She also testified that upon receiving any application, the Data Entry Team would refer to the SalesLink website to verify an agent's compliance with the product specific training requirements. *Id.*; Excerpt from Jennett Dep. at 13, ECF No. 30-13. The New Business Department which reports to her would also perform this verification. *Id.* With respect to Klingshirn, she testified that a note on F&G's administrative system made on November 16, 2011 indicated that Klingshirn had not completed the required product specific training and that F&G had notified BHC to request that Klingshirn complete the

---

[2] As the parties have only provided the Court with various excerpts from this deposition, the Court is unable to determine the exact date(s) on which the deposition was taken and the context of some of Nancy Jennett's statements. *See* ECF Nos. 28-10, 30-13, 28-4, 28-9, 28-8.

relevant training. Excerpt from Jennett Dep. at 23, ECF No. 28-4. Although Jennett was able to agree that Klingshirn had completed the required product specific training on October 28, 2011 when Klingshirn presented her with the SalesLink printout he had emailed to BHC and introduced as an exhibit in these proceeding, Jennett testified that when the November 16, 2011 letter was sent to Kovacs, Defendant F&G did in fact believe that the statement "certain regulatory or administrative requirements were not completed by your agent prior to the sale of your policy" was true. Excerpt from Jennett Dep. at 14, ECF No. 30-13; Jennett Dep. at 26, ECF No. 28-9.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent

7

factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Defendant Fidelity & Guaranty Life Insurance Company ("Defendant" or "F&G") contends that it is entitled to summary judgment because there is no genuine issue of material fact, Defendant is protected by a conditional privilege and Plaintiff has failed to establish claims of defamation and libel *per quod*.[3] While Plaintiff Kent Klingshirn ("Plaintiff" or "Klingshirn") agrees that there is no genuine issue of material fact in this case, Klingshirn argues that he is entitled to summary judgment.[4] Specifically, Klingshirn claims that he has established claims for defamation and libel *per se* and that Defendant has not established that it is protected by a conditional privilege.

The statements at issue in this case are contained in a letter that Defendant addressed to Klingshirn's client, Jack C. Kovacs ("Kovacs"), and a notice to Klingshirn's up the line agency, BHC Marketing, Ltd. ("BHC"), concerning the rejection of Kovacs annuity policies application due to his agent's failure to complete the required product specific training prior to selling Kovacs the policies. The letter, sent on November 16, 2011, specifically stated that Defendant was "unable to accept [Kovacs'] application at this time because certain

---

[3] Although Plaintiff alleges a claim of libel *per se*, Defendant contends that the alleged defamatory statement does not rise to the level of libel *per se* as it is not apparent on the face of the statement whether it is or is not defamatory. *See infra* defamatory *per se* and *per quod* discussion.
[4] The Court notes that Plaintiff has not moved for summary judgment in this case.

8

regulatory or administrative requirements were not completed by [his] agent prior to the sale of [his] policy." Pl.'s Compl., Ex. B, ECF No. 1-3.

As a preliminary matter, Klingshirn is obviously not a public figure. He has not achieved "fame or notoriety" or "special prominence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). As an ordinary citizen claiming defamation, Klingshirn's claim is evaluated under well-established Maryland law. That standard is:

> Under Maryland law, a defamatory statement is one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person. To establish a *prima facie* case of defamation when the plaintiff is not a public figure, the plaintiff must prove: (1) that the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. The "fault" element of the calculus may be based either on negligence or actual malice. As we explained in *Shapiro*, 105 Md. App. 743, 661 A.2d 202, actual malice "is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." On the other hand, negligence need only be shown by a preponderance of the evidence.

*Samuels v. Tschechtelin,* 763 A.2d 209, 241-42 (Md. Ct. Spec. App. 2000) (citations and quotation marks omitted).

With respect to the first element, this Court must determine (1) whether Defendant's letter constitutes libel *per se* or libel *per quod*. The Maryland Court of Appeals has stated:

> [T]he only distinction remaining in Maryland between a libel *per se* and a libel *per quod* is that to recover the plaintiff must first show that the publication is defamatory. Where the words themselves impute the defamatory character [per se], no innuendo—no allegation or proof of extrinsic facts—is necessary; but otherwise, it is [per quod]. This is both a pleading rule and an evidentiary requirement

*Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979). Additionally, the distinction between defamation *per se* and defamation *per quod* is as follows:

> In the case of words or conduct actionable *per se,* their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case of words or conduct actionable only *per quod,* the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage.

*M&S Furniture Sales Co. v. Edward J. DeBartolo Corp.*, 241 A.2d 126, 128 (Md. 1968); *accord Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1119 (Md. 1979). Whether an alleged defamatory statement is *per se* or *per quod* is a question of law for the court. *See, e.g., Tschechtelin,* 763 A.2d at 244-45 (citations omitted).[5] In general, a statement is defamatory if it exposes "the person [who is the subject of it] to public scorn, hatred, contempt or ridicule and thus injure[s] reputation." *Leese v. Baltimore Cnty.*, 497 A.2d 159, 175 (Md. App. 1985). Additionally, a statement is defamatory *per se* when "if true, [it] would disqualify [an individual] or render him less fit properly to fulfill the duties incident to the special character assumed." *Id.* (citations omitted).

In this case, the statement "certain regulatory or administrative requirements were not completed by [his] agent prior to the sale of [his] policy" while indicative of the fact that Klingshirn, who is not named in the letter, may have to complete further regulatory and administrative requirements, is clearly not defamatory on its face. It does not expose

---

[5] Where a statement is defamatory *per se,* and the plaintiff demonstrates by clear and convincing evidence that it was made with actual malice, a "presumption of harm to reputation . . . arises from the publication of words actionable *per se.* A trier of fact is not constitutionally barred from awarding damages based on that presumption in [an actual] malice case." *Hanlon v. Davis,* 545 A.2d 72, 80-81 (Md. App. 1988) (citation omitted).

10

Klingshirn to public scorn, hatred, contempt or ridicule nor does it disqualify or render him less fit to properly fulfill his duties. If anything, the statement merely invites Klingshirn to complete the required training or in the event, as here, that the training is completed, inform Defendant that its information is not accurate. As such, this statement is not libel *per se*.

As mentioned above to establish a libel *per quod* claim a plaintiff must provide extrinsic evidence that demonstrates the defamatory nature of the statement and proves actual damages. *See M&S Furniture Sales*, 241 A.2d at 128. Klingshirn has offered no extrinsic evidence to suggest that the statement was defamatory. The record reflects that upon receiving the letter Kovacs did not believe that the statement was defamatory. Kovacs first understood it to mean that he had missed some type of deadline and then understood that Klingshirn needed to complete some type of requirement. Moreover, Kovacs testified that he did not cease to do business with Klingshirn at that time, that he still does business with Klingshirn and that he has recommended Klingshirn to at least one person. Kovacs only refused to resubmit his applications because he "got cold feet." Kovacs Dep. at 13, ECF No. 28-6. Therefore, Klingshirn has not established that Defendant made a defamatory statement to Kovacs. Similarly, Klingshirn has not established that Defendant made a defamatory statement to BHC.

Alternatively, even if the statement was deemed to be defamatory, Klingshirn has not provided any evidence that at the time the letter was sent, the statement was knowingly untruthful. In fact, the deposition testimony of Nancy Jennett indicates that when the letter was issued on November 16, 2011, F&G believed that the statement "certain regulatory or

11

administrative requirements were not completed by your agent prior to the sale of your policy" was true. Jennett Dep. at 26, ECF No. 28-9. Moreover, the record reflects that on November 1, 2011, Klingshirn was notified by BHC that F&G was having difficulties accessing his requirement completion information on SalesLink. While Klingshirn emailed a printout of his SalesLink product specific training completion to BHC, Klingshirn did not contact F&G to ensure that their records were accurate. Additionally, F&G stated in a correction letter to Kovacs that an administrative error had caused them to issue the November 16, 2011 letter and that Klingshirn had in fact completed the required training. Thus, the evidence on the record indicates that while the statement may have been inaccurate at the time it was made, the Defendant believed it to be true and corrected it as soon as the mistake was brought to its attention.

Regarding the third element, Klingshirn has not established that the Defendant was at fault. In Maryland, a plaintiff can prove falsity under three standards: a negligence standard, a constitutional malice standard, or an actual malice standard. *Gooch v. Maryland Mech. Sys., Inc.*, 567 A.2d 954, 961 (Md. App. 1990). To establish negligence, the plaintiff must prove that the "defendant failed to act as a reasonable person under the circumstances." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 731 (D. Md. 2009). Maryland courts have interpreted constitutional malice as a "reckless disregard for the truth of the statement" and actual malice as "knowledge of the falsity of the statement." *Gooch*, 567 A.2s at 961. There is no evidence with respect to either of these standards. While the record reflects that Defendant's failure to know that Klingshirn had completed the required training was due to

an administrative error, Klingshirn has not provided any evidence that would indicate that Defendant acted negligently, out of constitutional malice or actual malice.

Finally, Klingshirn has failed to establish that he has suffered actual damages. In Maryland, damages related to defamation claims are limited to actual damages. *Gooch*, 567 A.2d at 960. As stated above, where the statement constitutes libel *per quod*, actual damages must not only be alleged but proven. *See id.* at 962. Furthermore, actual damages must be alleged "with some particularity." *Id.* In *Brown v. Prince George's Hospital*, this Court rejected a plaintiff's damage calculation obtained "through 'online research' at an EEOC website" stating that "unsupported and conclusory statements as to . . . damages cannot survive summary judgment as [they] fail to create a genuine issue of material fact for trial." RWT-09-295, 2011 WL 2413344, at * 6 (D. Md. June 9, 2011). Additionally, this Court rejected the plaintiff's "mere conclusory statements to establish that she suffered harm" by holding that the plaintiff had failed to "present any evidence in support of her contentions that she suffere[d] from anxiety and insomnia as a result of [d]efendant's alleged defamatory communications." *Id.*

In this case, Klingshirn admitted during his deposition that his calculations of "compensatory damages for loss of reputation, humiliation, emotional distress and loss of client" were based on other cases he found on the internet site VerdictSearch.com. Klingshirn Dep. at 70, ECF No. 28-2. Klingshirn further acknowledged that none of the cases relied upon involved insurance agents. *Id.* Additionally, although Klingshirn claims that he became physically ill by vomiting once and suffered from anxiety and sleeplessness,

he has admitted that he did not seek medical treatment or counseling. Klingshirn Dep. at 64-67. Moreover, despite his claim that he lost a client, Kovacs' deposition clearly indicate that Klingshirn did not lose a client and that the statement did not adversely affect the agent-client relationship as Kovacs is still going business with Klingshirn. Accordingly, Klingshirn has failed to establish every element of a defamation claim. As such, Defendant is entitled to summary judgment.

Alternatively, even if Klingshirn had successfully established his defamation and libel claims, Defendant would be protected by the affirmative defense of a conditional privilege. In fact, Defendant asserted a conditional privilege in its Answer as its Eighth Affirmative Defense. In Maryland, a defendant in a defamation suit may assert a qualified or conditional privilege. *See, e.g., Woodruff v. Trepel*, 725 A.2d 612, 617 (Md. Ct. Spec. App. 1999), *cert. denied*, 731 A.2d 440 (1999). As the Maryland Court of Appeals has explained:

> The common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest. . . . Specifically, the common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general.

*Gohari v. Darvish*, 767 A.2d 321, 328 (Md. 2001) (quoting *Marchesi v. Franchino*, 387 A.2d 1129, 1131 (Md. 1978)); *see also McDermott v. Hughley*, 561 A.2d 1038, 1046 (Md. 1989) ("A statement is accorded a qualified privilege only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some

14

duty with respect thereto.") (citation and internal quotation marks omitted). Although the existence of a qualified privilege is a question of law for the court, whether that privilege has been abused is ordinarily left for the jury to decide. *Id.* at 333; *see also General Motors Corp. v. Piskor*, 352 A.2d 810, 816 (Md. 1976).

This Court finds that Defendant is entitled to a conditional privilege with respect to the statement in this case. Defendant wrote to Kovacs on November 16, 2011 for the purpose of protecting its and Kovacs' interests by not accepting an application submitted by an agent who Defendant believed had failed to comply with "certain regulatory and administrative requirements." Defendant would lose the conditional privilege recognized by this Court if Klingshirn could show that " 'the publication [was] made for a purpose other than to further the social interest entitled to protection . . . or can prove malice on the part of the publisher.' " *Gohari*, 767 A.2d at 333 (quoting *McDermott*, 561 A.2d at 1047). After reviewing the evidence, this Court concludes that Klingshirn has failed to identify facts that are sufficient to make such a showing. First, there is no evidence to suggest that the statement at issue was made for a purpose other than to further the protected interest. Second, there is evidence in the record to suggest that, to the extent that Defendant made any allegation against Klingshirn, it possessed a reasonable basis for doing so. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant Fidelity & Guaranty Life Insurance Company's Motion for Summary Judgment (ECF No. 28) is GRANTED.

A separate Order follows.

Dated: August 22, 2013 /s/_____
Richard D. Bennett
United States District Judge